UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

Vs                                             Case No.: 1:20CR00054-001

LANCE LUCAS

    Defendant

### SENTENCING MEMORANDUM ON BEHALF OF DEFENDANT, LANCE LUCAS

**COMES NOW** the Defendant, Lance Lucas, by and through his undersigned counsel, Jerry Tarud, Esquire and hereby files the following Sentencing Memorandum setting forth factors that the Court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a). In support thereof, Mr. Lucas states as follows:

**I. INTRODUCTION**

On 3/9/20, Mr. Lucas pled guilty to Count one - Honest Services Wire Fraud and Count Two - Travel Act. Under the relevant statutes, Mr. Lucas is facing up to twenty years of incarceration in Count #1 and five years of incarceration in Count #2. The current sentencing guidelines are scored as twenty one in category I, having imprisonment in the range of 37-46 months.

Furthermore, pursuant to the parties' agreement that Mr. Lucas is entitled to the following reductions:

1

a) That the government does not oppose a two-level reduction based upon prompt recognition & acceptance of responsibility (Plea Agreement at 5, ECF No. 6.).

b) That the government does agree to make a motion for an additional one-level decrease for personal responsibility (Plea Agreement at 5, ECF No. 6.).

c) The government does agree to make a motion of up to four levels downward departure due to Mr. Lucas providing substantial assistance, fully complied with all obligations (Sealed Supplement to Plea Agreement at 19, section 4, ECF No. 7.).

Based on the downward departure of 7 points, this would bring the sentencing guideline range to an offense level of 14, thus giving an imprisonment range of 15-21 months. Therefore, Mr. Lucas respectfully asks that the Court sentence him to not more than 15 months of imprisonment / home detention.

Mr. Lucas is forty five years of age and **has serious health issues** and, meaning an excessive sentence would prove counterproductive in hastening Mr. Lucas's path to rehabilitation. Defense Counsel is seeking home detention for Mr. Lucas because Mr. Lucas has already paid a severe price from a financial and career point of view. *United States v. Thomas*, 360 F. Supp. 2d 238, 243 (D. Mass. 2005) (declining to impose an excessively harsh sentence, citing the §3553(a) factors).

**II. SENTENCING UNDER BOOKER**

In 2005, the United States Supreme Court determined that judges are no longer required to apply the United States Sentencing Guidelines ("Guidelines") in a mandatory fashion when determining the appropriate sentence for a defendant. *United States v. Booker*, 543 U.S. 220, 245 (2005). Since then, a sentence must be "reasonable" for it to be considered lawful. *See United*

*States v. Kimbrough*, 552 U.S. 85 (2007); *Gall v. United States*, 552 U.S. 38, 51 (2007).  "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall*, 552 U.S. at 49.  "[T]he Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however." *Id.* "[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable." *Id*. at 49–50.

Other statutory sections provide additional guidance for the district court in fashioning an appropriate sentence.  Specifically, 18 U.S.C. §3582 states in part: "The court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. §3582(a). As such, even if the Guidelines suggest that a sentence of imprisonment is appropriate, if after consideration of the § 3553 factors and any other facts in mitigation that suggest that the Guideline calculation does not provide for a fair and just sentence in this case, the Court is "not bound by" the Guideline calculations.  *United States v. Dean*, 604 F.3d 169, 174 (4th Cir. 2010).

### III. THE APPROPRIATE GUIDELINES CALCULATION IN THIS CASE

A Pre-sentence Investigation Report ("PSR") has been prepared by the United States Probation Office. After the appropriate deductions for acceptance of responsibility, the PSR placed the total offense level at 21, with a criminal history category of I and calculated a

guidelines range of 37 to 46 months, and at least 1 to 3 years of supervised release. Addendum To The Pre-sentence Report  p. 25.

1. **Mr. Lucas's Criminal Conduct**

This case arises out of Mr. Lucas being an entrepreneur and businessman as he formed his own non-profit business known as "Digit All Systems."  Mr. Lucas developed the nationally recognized Cyber Warrior Diversity Program curriculum to sell to institutions offering education and training to persons interested in cyber security.  Through this cyber security dealing, Mr. Lucas partnered with other individuals / businesses who were engaged in the distribution / growing of medical marijuana.  These businesses were based out of Baltimore and sought a medical marijuana grower license.  Mr. Lucas attended several functions with MD Delegate Cheryl Diane Glenn who represented District 45, which covered portions of Baltimore, MD.

Mr. Lucas advocated on behalf of the businesses seeking a medical marijuana license and paid Delegate Glenn a total of $42,500.00 over a period of 11-payments.  It should be known that Delegate Glenn initiated the contact and solicited money from Mr. Lucas.  Mr. Lucas used his business contacts to come up with the sum of $42,500.00.  There are no identifiable victims before the Court.

In August of 2019, the FBI executed a search and seizure warrant in reference to the above crimes and it was from this day, Mr. Lucas cooperated fully with the Department of Justice.  Mr. Lucas was charged and subsequently plead guilty, which forms the basis of the coming sentencing. There are no allegations of violence or any aggravating factors for the court to consider.

2. **Mr. Lucas Acceptance of Responsibility**

Mr. Lucas appeared before the Honorable Judge Blake on 3/9/20 and pled guilty to counts one (Honest Services Wire Fraud) and count two (Travel Act). More importantly, Mr. Lucas accepted responsibility the very first day when the FBI confronted Mr. Lucas. The same day Mr. Lucas was confronted, he accepted responsibility by giving the FBI a 3 hour recorded interview. Mr. Lucas' acceptance of responsibility continued as he cooperated fully with the FBI by making recorded phone calls, wore a camera (5-6 times), sent text messages, wore a body wire (approx. 9 times) and worked with the FBI on any given moment, potentially putting himself at risk. In fact, Mr. Lucas holds no ill will towards the FBI and has great respect for them. Mr. Lucas has clearly demonstrated acceptance of responsibility for the offense.

3. **Mr. Lucas Youth, Early Adulthood & Education**

Lance Lucas was born on 6/7/75, in Baltimore County, Maryland. He is the second of three children. His parents are Guy Lucas and Brenda Williams who were married. When Lance Lucas was approximately eight (8) years of age his father, Guy Lucas, left Brenda Williams for another woman. It was at this point in time that Brenda Williams raised Mr. Lucas in Baltimore City.

Lance Lucas described his father as being physically abusive toward the entire family. Mr. Lucas and his mother had a good relationship and Mr. Lucas had a strong upbringing with good values, especially in church. Although the family was poor, Lance Lucas and his mother were active with their community and became heavily involved with their church. It was at this point in time that Mr. Lucas realized that giving and helping others is of great satisfaction.

Mr. Lucas reported emotional problems in middle school as a result of physical abuse by his father.  He would meet with his guidance counselor at school during the seventh and eighth grades.  Mr. Lucas graduated High School in 1993.  In 1992, Mr. Lucas enlisted in the U.S. Army Reserves (early enrollment while in High School).  While enlisted in the U.S. Army, Mr. Lucas worked as a medical laboratory technician between 1993 and 1994.  Between 1997 and 1999, Mr. Lucas was stationed at the Walter Reed National Military Medical Center in Bethesda, MD.  Mr. Lucas was given a general discharge under honorable conditions in the year 2000.

In 2000, Mr. Lucas earned his Bachelor's Degree in Social Science from Coppin State University.  Currently, Mr. Lucas is furthering his education by attending school at the graduate level.  Mr. Lucas is majoring in Human Services with a concentration in not-for-profit management.  He is expected to earn his Master of Science degree in 2021.

From 2002 to 2016, Mr. Lucas was the Chief Executive Officer for Digit All Systems, Inc., a company he operated with his business partner Joe Sutton.  Digit All Systems provided training and certifications to the underprivileged population, ex-offenders, homeless teens, etc.  Mr. Lucas was willing to help anyone who was truly interested in advancing themselves.  The business did exceptionally well in Baltimore and branched out to offices in New Orleans, Miami, Chicago, Washington D.C., Los Angeles, and Chicago.  Mr. Lucas gained recognition at the national level due to the many people he helped turn around.  These people are now employed by Northrop Grumman, Boeing, Verizon, T. Rowe Price, Lockheed Martin, Cisco, Booze Allen, Cyber Point and other industry leaders.

Mr. Lucas also held various teaching positions throughout his career. Between 2002 and 2006, Mr. Lucas worked as a technician instructor at Imani Christian School in Baltimore, which is now closed. Between 1998 and 2005, Mr. Lucas worked as a technical instructor at The New Mark of Excellence School in Baltimore County. Between 2001 and 2002, Mr. Lucas worked as a technician instructor at Christian Lake School in Baltimore County. Furthermore, Mr. Lucas was also a long-term substitute teacher in the Baltimore City School System. In 2016 Mr. Lucas was a curriculum development specialist for Baltimore City Community College. Simply put, Mr. Lucas loved to share his knowledge of technology with anyone that wanted to better themselves. In doing so, Mr. Lucas has changed the lives of many for the better.

**IV. ANALYSIS OF THE 18 U.S.C. § 3553(a) FACTORS**

The Court must consider the § 3553(a) factors, weigh them properly, and fashion an appropriate sentence based on the facts of the case. *United States v. Evans*, 526 F.3d 155, 161 (4th Cir. 2008). Pursuant to 18 U.S.C. §3583(e), the Court must consider sections 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7). *See Kimbrough v. United States*, 552 U.S. 85, 101 (2007). Consideration of these factors support a finding that a sentencing of not more than **15 months** is the appropriate disposition in this case.

(1) "The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant" (18 U.S.C.§3553(a)(1)) – The discussion above provides ample evidence of the "characteristics" of Mr. Lucas, and the "nature and circumstances" of the offense. Further, Mr. Lucas is forty five years of age, is susceptible to illness due to pre-existing medical conditions (Respiratory and a protracted period of incarceration would prove counter productive, especially

due to the outbreak of COVID-19 within the penal system, thus making home detention a reasonable solution. As the evidence suggests, there are no "identifiable victim[s]" in this case, nor did Mr. Lucas "impede or obstruct" justice, as so many others do when their criminal conduct is detected. That, of course, does not diminish the harm that Mr. Lucas' conduct caused. And he does not suggest otherwise. We only make these points to highlight that Mr. Lucas' crime was not associated with any violence, threats, nor obstruction of justice.

(2) "<u>The Need for the Sentence Imposed (A) to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense, (B) to Afford Adequate Deterrence to Criminal Conduct; (C) to Protect the Public from further Crimes by the defendant; and (D) to Provide the defendant with the needed Educational or Vocational training, Medical care, or other Correctional Treatment in a more Effective manner</u>." (18 U.S.C.§3553(a)(2)) – The Court must impose a sentence that is "sufficient, but not greater than necessary," to achieve the goals of sentencing. §3553(a); *Kimbrough v. United States*, 552 U.S. 85, 101 (2007).

As noted above, Mr. Lucas is forty five years of age, with pre-existing medical conditions. With great deference to this Honorable Court, a sentence of incarceration would likely place Mr. Lucas in harm's way on account of COVID-19 and/or other medical complications related to Mr. Lucas' pre-existing medical condition. Home Detention would assure the Defendant's health, safety and well being along with that of prison officials as well. The FBI, the Prosecutor and this Court have personally witnessed Mr. Lucas' remorse for his wrongdoing as expressed by his full cooperation with the Government since day one. By doing so, Mr. Lucas has already made a course correction in life. To be sure, his conduct here is not

8

heinous, nor unforgivable; and it is not the kind of crime for which society has identified as irredeemable. *See Miller v. Alabama*, 567 U.S. 460, 472-73 (2012) (noting the kinds of conduct that society deems incorrigible); *see also Graham v. Florida*, 560 U.S. 48, 74 (2010) (observing the kind of sentences that "forswears altogether the rehabilitative ideal").

Age, like any other personal characteristic of the defendant, is a permissible mitigating factor for the court to consider when imposing a sentence that is "sufficient, but not greater than necessary," to achieve the goals of sentencing. §3553(a); *see also* U.S. Sentencing Guidelines Manual § 1B1.10, cmt. n.1(b)(i). Just recently, the Supreme Court reaffirmed the principle that "incorrigibility is inconsistent with youth." *Miller,* 567 U.S. at 473 (citation and quotations omitted). The Court has also said that a defendant's age, as a reflection of his "character," is a permissible "mitigating factor" that the court should consider "'when inquiring into the conduct of [the] defendant.'" *Gall*, 552 U.S. at 58.

Mr. Lucas is forty five years old, has lived his entire life making this world a better place by creating jobs, through educating thousands of students, and by dedicating his life to helping the poor and less fortunate. Mr. Lucas does not make any excuses as to why he did what he did, and accepted responsibility for his conduct. The likelihood of Mr. Lucas violating any other laws and entering back into the criminal justice system is highly unlikely.

(3) "[T]he Kinds of Sentences Available" (18 U.S.C.§3553(a)(3)) – Although the court may impose a sentence at or near the high end of the applicable guidelines range, the guidelines also contemplate that a sentence at the low end of the spectrum to include home detention may be sufficient to serve the goals of sentencing. See *United States v. Scott*, 426 F.3d 1324, 1328 (11th Cir. 2005) (affirming sentence imposed at the low end of the guidelines range based upon

§3553 factors).  Here, the record shows that Mr. Lucas had an abusive father and grew up in poverty.  Despite the abuse and growing up in poverty, Mr. Lucas was able to put that behind him and became a productive member of society.

Mr. Lucas spent nearly two weeks in the intensive care unit at Mercy Hospital in April of 2020, where he was diagnosed with a massive pulmonary embolism in his lungs.  Upon discharge, ***Dr. Michael Brady emphasized that Mr. Lucas should use the utmost care staying away from people because in the event that Mr. Lucas contracts COVID-19, that it could be devastating to his health and even lead to death because of his pre-existing condition.***  (See Defense Exhibit A).  Defense Counsel argues that Home Detention is reasonable and appropriate based on the totality of circumstances.  Home Detention would satisfy the goals of sentencing.

(4) <u>The Applicable Guidelines Range</u> (18 U.S.C.§3553(a)(4)) – The applicable guidelines range under the 2019 Guidelines Manual are 37 to 46 months.  Please note that it is Defense Counsel's understanding that the Government does not oppose a two-level reduction based upon prompt recognition and acceptance of responsibility.  Furthermore, the Government did agree to make a motion for an additional one-level decrease in recognition due to acceptance of personal responsibility.  Lastly, Pursuant to Section 5K1.1. and/or 18 U.S.C. section 3553(e) the government has the sole discretion for a downward departure of up to four levels due to determining whether Mr. Lucas provided substantial assistance.  Based on the downward departure of 7 points, this would bring the sentencing guideline range to an offense level of 14, thus having the imprisonment range of 15-21 months.  Therefore, Mr. Lucas respectfully asks that the Court sentence him to not more than 15 months of imprisonment / home detention.

## CONCLUSION

After the Court considers the arguments and analysis detailed above, there is sufficient evidence to allow the Court to sentence Mr. Lucas to Home Detention. Specifically, Mr. Lucas respectfully asks the Court to utilize this memorandum to impose a sentence of home detention.

WHEREFORE, Mr. Lucas respectfully prays that this Honorable Court will impose a sentence of Home Detention.

Respectfully submitted,

*Jerry Tarud*

_____
Jerry Tarud, Esq.
200 E. Lexington St. Suite 1200
Baltimore, MD 21202
443 278 6184
JTLawEsq@aol.com

*Counsel for the Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of August, 2020, I electronically filed the foregoing Sentencing Memorandum, using the CM/ECF filing system, which sent notice of electronic filing to all interested parties. The Honorable Judge Blake & Leo.Wise@usdoj.gov

*Jerry Tarud*

_____
Jerry Tarud, Esq.