IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Criminal No.  CCB-20-054 |
| | * | |
| LANCE ANDRE LUCAS | * | |

**********

## MEMORANDUM

Now pending is a motion filed by Lance Lucas seeking to reduce his sentence of eighteen months incarceration to eighteen months on home confinement. Under the extraordinary circumstances presented here, which will require a chronological recitation of the relevant aspects of Mr. Lucas's medical history, and the history of this case, the motion will be granted.

## HISTORY

On March 9, 2020, Lucas pled guilty to a two-count criminal information charging him with honest services wire fraud and a violation of the Travel Act, both in connection with a scheme to bribe then State Delegate Cheryl Glenn related to medical marijuana growing licenses. (ECF 6). On July 29, 2020, Glenn, who also pled guilty to similar charges, was sentenced to serve 24 months in the custody of the Bureau of Prisons, with a reporting date of September 21, 2020. *United States v. Glenn*, No. CCB-19-cr-0351, (D. Md. filed July 29, 2020), ECF 31; (*see also id.* (D. Md. filed July 31, 2020), ECF 34, Judgment). On September 17, 2020, Lucas was sentenced to eighteen months in the custody of the Bureau of Prisons. (ECF 22). He was given a reporting date of January 4, 2021, and it was recommended to the BOP that he have a comprehensive medical evaluation before designation. (ECF 23, Judgment at 2).[1] At sentencing, Lucas argued for home confinement

---

[1] Lucas was designated to serve his sentence at FCI Butner Low in Butner, North Carolina. (ECF 25, Mot. for Delayed Reporting Date ¶ 2).

based in part on his significant health conditions, but the request was denied based on the information then available and in light of his relative culpability with Glenn, who had recently been sentenced to serve two years in prison.

On November 5, 2020, however, Lucas requested and was granted without opposition an extension of his self-surrender date to June 7, 2021. (ECFs 25, 26). Lucas averred that his medical records indicated that his "pre-diabetes" had advanced to diabetes type 2, that he also suffered from obesity and blood clots, and that he was scheduled for CAT scan and ultrasound in April 2021. (*Id.* ¶¶ 5-8). Lucas sought to obtain the Covid-19 vaccine for health reasons before being incarcerated. (*Id.* ¶¶ 10, 11, 14). On May 26, 2021, Lucas requested another extension because tests had indicated continuing blood clots, especially in his lungs, for which he was being placed on new anti-coagulation medication that required frequent monitoring. (ECF 27, Mot. for Modification of Sentence). His treating physician noted that Lucas's obesity, diabetes, and lung disease all put him at higher risk of severe complications from Covid-19 if he were infected. (ECF 27 ¶¶ 5-10; ECF 28, Medical Rs.). An extension was granted and a status report was requested by August 4, 2022. (ECF 31, Order).

Counsel for Lucas filed another status report July 29, 2021, noting Lucas had two emergency room visits for pneumonia in July and needed weekly monitoring for blood clots and medication adjustment. (ECF 32, Status R.). A status report filed on January 7, 2022, set forth that Lucas was diagnosed with COPD in October 2021 and had been treated for a lung infection later in the fall as well as requiring an emergency room visit for pharyngitis and complications of diabetes affecting his left foot. (ECF 34, Status R.). He had multiple follow-up visits scheduled for a lung scan and to address diabetes complications including toe ulceration, confirmed by medical records filed February 25, 2022. (ECF 36, Correspondence; ECF 36-2, Medical Rs.).

In a conference call held April 13, 2022, counsel indicated he planned to file a motion for home confinement. The motion was delayed because Lucas was admitted to the hospital for a lung infection (pneumonia) on April 22, 2022, and not discharged until April 28, 2022. (ECF 38, Mot. for Home Confinement ¶ 10). The present motion was filed on May 2, 2022. (*See generally id.*).[2]

Most recently, according to the Pretrial Services Officer supervising Lucas, he required emergency hernia surgery in early July, 2022.

## ANALYSIS

Ordinarily, a court may not modify a term of imprisonment once it has been imposed except through the compassionate release process set forth in 18 U.S.C. § 3582(c)(1)(A), or under other circumstances not relevant here. The defendant may file a motion for reduction of sentence with the court, but only after exhausting administrative remedies by first making a request to the warden of the BOP facility where he is incarcerated. A motion may be granted upon a showing that "extraordinary and compelling reasons" warrant the reduction, and that such a reduction also would be consistent with the factors enumerated in 18 U.S.C. § 3553(a). *See United States v. McCoy*, 981 F.3d 271, 275-76 (4th Cir. 2020). Here, there are several extreme and unusual circumstances that have developed since the initial sentencing which make it impractical and inequitable to delay the decision that a reduction in the sentence is warranted.[3]

First, Lucas's medical conditions have worsened over time. The unpredictability of his need for emergency treatment, including hospitalization as recently as April 2022, and surgery as

---

[2] The government objects to the request but has not filed a written opposition.

[3] Counsel for Lucas advances other arguments based on his client's educational and employment attainments while on release pending sentencing. Those accomplishments, while commendable, do not in any way influence the court's decision to grant this motion.

recently as July 2022, has made it virtually impossible to identify a reporting date with any assurance that his health will be sufficiently stable for him to travel at that time.

Second, his worsened conditions, and the recent rise in Covid infections even among the population that is vaccinated and boosted, would readily qualify as "extraordinary and compelling reasons" for release. The Centers for Disease Control ("CDC") has issued guidance on underlying conditions that increase an individual's risk of severe illness related to COVID-19. *See Underlying Medical Conditions Associated with High Risk for Severe COVID-19: Information for Healthcare Providers*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (updated June 15, 2022). The CDC distinguishes between those conditions that are supported by "meta-analysis or systematic review" (e.g., cancer), those that are "suggestive of higher risk" and supported by observational studies (e.g., substance use disorders), and those that are supported only by "mixed evidence" (e.g., hypertension). *Id.* Lucas suffers from COPD, pulmonary embolism, diabetes mellitus type 2, and obesity (*see* ECF 36-2 at 2, 24, 28, 30), all of which are on the CDC's list of underlying conditions that increase an individual's risk of severe illness related to COVID-19. *Id.*

Third, while some of the 3553(a) factors, including the seriousness of the offense, remain unchanged, the calculus as to relative culpability has been altered. Former Delegate Glenn reported to the BOP in September 2020, but was transferred to home confinement, apparently for health-related reasons, sometime before January 7, 2021, thus serving approximately three months, rather than two years, in prison. (ECF 43, Mot. Withdrawing Mot. for Compassionate Release).

## CONCLUSION

For the reasons stated above, the motion to reduce sentence will be granted. An amended judgment will be issued sentencing Mr. Lucas to two years of probation on each count, to run

concurrent, subject to the same mandatory standard and additional conditions as in the original

judgment, with the additional condition of 18 months on home detention, with location monitoring

at the discretion of the probation officer.

A separate order follows.

July 29, 2022
Date

Catherine C. Blake
United States District Judge